IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| COLUMBIA GAS TRANSMISSION, LLC, | : | Case No. 4:13-cv-00778 |
| Plaintiff | : | |
| | : | (Judge Brann) |
| v. | : | |
| | : | |
| 1.01 ACRES, MORE OR LESS IN PENN TOWNSHIP, YORK COUNTY, PENNSYLVANIA, LOCATED ON TAX ID# 440002800150000000, OWNED BY DWAYNE P. BROWN AND ANN M. BROWN, et al., | : | |
| | : | |
| Defendants. | : | |
| COLUMBIA GAS TRANSMISSION, LLC, | : | Case No. 4:13-cv-00783 |
| Plaintiff | : | |
| | : | (Judge Brann) |
| v. | : | |
| | : | |
| 101 ACRES, AND 41,342 SQ. FT. MORE OR LESS IN HEIDELBERG TOWNSHIP, YORK COUNTY, PENNSYLVANIA, LOCATED ON TAX ID# 30000EE01600000000, OWNED BY BRADLEY E. HERR AND ELIZABETH M. HERR, et al., | : | |
| | : | |
| Defendants. | : | |

| | |
|---|---|
| COLUMBIA GAS TRANSMISSION, LLC,<br>    Plaintiff<br><br>    v.<br><br>1.5561 ACRES, MORE OR LESS IN HEIDELBERG TOWNSHIP, YORK COUNTY, PENNSYLVANIA, LOCATED ON TAX ID# 30000ED010300000000, OWNED BY MYRON A. HERR AND MARY JO HERR, et al.,<br><br>    Defendants. | Case No. 4:13-cv-00785<br><br>(Judge Brann) |
| COLUMBIA GAS TRANSMISSION, LLC,<br>    Plaintiff<br><br>    v.<br><br>1.010 ACRES, MORE OR LESS IN PENN TOWNSHIP, YORK COUNTY, PENNSYLVANIA, LOCATED ON TAX ID# 44000280024000000, OWNED BY DOUGLAS W. HILYARD AND TESSA J. HILYARD, et al.,<br><br>    Defendants. | Case No. 4:13-cv-00786<br><br>(Judge Brann) |

**MEMORANDUM**

**May 20, 2014**

For the following reasons, the Court denies the motions of Columbia Gas

Transmission, LLC (hereinafter, "Columbia Gas") to alter or amend judgment.

## I. Background

On December 13, 2013, plaintiff Columbia Gas timely moved to alter or amend judgment under Fed. R. Civ. P. 59(e). The judgment in question is the Court's November 15, 2013 grant of summary judgment in favor of the various defendant landowners. The Court's reasons for granting summary judgment are set forth in an October 24, 2013 memorandum opinion, which is available on the four dockets set forth in the caption and at 2013 WL 5773414.

To avoid redundancy, the Court assumes familiarity with its previous opinion. In short, faced with ambiguous regulatory provisions, 18 C.F.R. §§ 157.202(b)(2)(I) & 157.208(a), the Court deferred to the Federal Energy Regulatory Commission's (hereinafter, "FERC") interpretation of its own regulations and held that Columbia Gas's Line 1655 project in York County, Pennsylvania does not constitute a "replacement" of existing pipeline because the project involves rerouting the pipeline around a densely populated area. Corollary to this holding, the Line 1655 project does not qualify for pre-authorization under Columbia Gas's certificate of public convenience and necessity (hereinafter, Columbia Gas's "blanket certificate"), and Columbia Gas lacks authority to condemn pipeline easements from the landowners as necessary to complete Line

1655 project. Accordingly, the Court granted summary judgment in favor of the defendant landowners, who seek to prevent Columbia Gas's taking of the easements by condemnation.

Columbia Gas's motion to alter or amend judgment is prompted by FERC's Final Rule entitled <u>Revisions to Auxiliary Installations, Replacement Facilities, and Siting and Maintenance Regulations</u>, issued on November 22, 2013, just one week after the Court's final order in the landowners's favor. 78 Fed. Reg. 72794 (Dec. 4, 2013) (to be codified at 18 C.F.R. §§ 157 & 380). In a footnote to the discussion of the new Rule, FERC states the following:

> We note that in instances where a pipeline company needs to rely on its Part 157 certificate to construct auxiliary or replacement facilities because they do not satisfy the location or work space limitations of section 2.55, the Part 157 blanket certificate regulations impose no limitations on the placement of the facilities. While the Commission has indicated previously that it is contemplated that replacement facilities constructed under blanket authority would usually be located adjacent to, if not within, an existing right-of-way, sections 157.202(b)(2)(i) and 157.210 permit the construction of non-main line facilities and main line facilities, respectively, without restriction on their location. For example, a company can rely on its Part 157 blanket certificate to replace the capacity of a segment of obsolete pipeline with new pipeline that may need to be located at considerable distance from the old pipeline in order to avoid a housing development constructed since the old pipeline was installed or to install auxiliary facilities such as anodes offset from the existing right-of-way to provide cathodic protection.

<u>Revisions to Auxiliary Installations</u>, 78 Fed. Reg. at 72,804 n.78. Columbia Gas argues that this footnote runs contrary to the Court's decision, which, based on

what FERC concedes it had "indicated previously," held that a company could not, in FERC's words, "rely on its Part 157 blanket certificate to replace the capacity of a segment of obsolete pipeline with new pipeline that may need to be located at considerable distance from the old pipeline in order to avoid a housing development constructed since the old pipeline was installed . . . ." Id. Accordingly, Columbia Gas seeks reversal of the Court's holding and an order vacating judgment in favor of the landowners.[1]

---

[1] Columbia Gas also advances the risible argument that "a quarter-mile distance between two objects qualifies the objects as adjacent to each other as a matter of law." (Pl. Supp. Br., Dec. 13, 2013, ECF No. 48 at 10). Even if this were true per force – and none of the cases cited by Columbia Gas establish that it is – the point is feckless because the Court's holding, contrary to Columbia Gas's mischaracterization, does not rise and fall based on the definition of adjacency. The Court's holding, rather, turns on what FERC had "indicated previously" with respect to whether a pipeline could be rerouted around an sizable obstacle and still be classified as a "replacement."

Recall that the Court drew FERC's interpretation of the regulations relevant to this case from a proposed rule intended to expedite pipeline reconstruction caused by "a deliberate effort to disrupt the flow of natural gas," i.e., terrorism. See Emergency Reconstruction of Interstate Natural Gas Facilities Under the Natural Gas Act, 68 Fed. Reg. 4120 (proposed Jan. 17, 2003) (to be codified at 18 C.F.R. pt. 157). The proposed rule arose from an April 22, 2002 "technical conference to consider whether to, or how to, clarify, expedite, and streamline permitting and approvals for interstate pipeline reconstruction following a sudden unanticipated service disruption." Emergency Reconstruction, 68 Fed. Reg. at 4120.

Reviewing the existing authority that a blanket certificate holder such as Columbia Gas might use in response to an emergency, FERC opined, "These regulations [i.e., the regulations under which Columbia Gas claims automatic authority to undertake the Line 1655 project] . . . do not appear to contemplate mainline construction over an entirely different route as may be necessary to

## II. Standard of Review

As Columbia Gas recognizes, "[a] proper Rule 59(e) motion [to alter or amend a judgment] . . . must rely on one of three grounds: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error of law or prevent manifest injustice." Lazaridis v. Wehmer, 591 F.3d 666, 669 (3d Cir. 2010) (per curiam).

Columbia Gas vacillates on the grounds for its motion (see Pl. Supp. Br., Dec. 13, 2013, ECF No. 48 (not stating grounds with particularity); Pl. Reply Br.,

---

circumvent the site of a disaster if immediate replacement is necessary before the original site is again available." Id. at 4122. FERC further explained that the regulations under which Columbia Gas claims pre-authorization are intended to meet gas companies's need for "flexibility . . . to replace facilities where construction of new facilities might spill over the original temporary workspace or permanent right-of-way," and do not provide authority for the "replacement of facilities outside the existing right-of-way by the creation of an entirely new route due to the need to circumvent an accident site." Id. at 4123 n.20 (emphasis added).

In considering the dimensions the agency had in mind, it is worth remembering that the "Ground Zero" site in Manhattan (9/11 being the terrorist attack that likely prompted the conferences culminating in FERC's proposed rule) measures sixteen acres, a mere one-quarter of the quarter-mile distance Columbia Gas seeks to move Line 1655. Dan Barry, New York Carries On, but Test of Its Grit Has Just Begun, N.Y. Times, Oct. 11, 2001, at B1 ("A month later, the extraordinary devastation of a 16-acre tract in Lower Manhattan has become almost an accepted condition by a city turning its attention to war"). This is not to say the physical damage wrought by 9/11 was not wider (indeed there was a "restricted zone" surrounding the World Trade Center complex), but merely to suggest FERC's likely view at the time: that a quarter-mile relocation of pipeline was not pre-authorized under the regulations cited by Columbia Gas.

Jan. 14, 2014, ECF No. 54 at 2 (Columbia moves . . . based principally on the third rationale); id. at 3 n.2 ("Columbia argues, in the alternative, that [FERC's Nov. 22, 2013 footnote] is an intervening change in FERC regulations.")), ultimately deciding that straight-faced characterization FERC's footnote as "controlling law" is a forlorn hope and resting on the argument that the Court based its judgment on a clear error of law.

### III. Discussion

Notwithstanding the landowner defendants's vain attempts to argue otherwise, it is clear that FERC would now have the Court hold that Columbia Gas's Line 1655 project is eligible for pre-authorization as a "replacement" of an "eligible facility," despite FERC's pre- November 22, 2013 statements to the contrary.

What effect under Fed. R. Civ. P. 59(e), then, should be given to FERC's about-face? Citing Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837 (1984), Columbia Gas asserts that FERC's November 22, 2013 footnote "is entitled to deference," and "unequivocally establishes that the Court's interpretation of the term 'eligible facility' to include a limitation on distance is incorrect." (Pl. Supp. Br. at 10). Having committed clear error, argues Columbia Gas, the Court should correct course.

The Court disagrees. Had they read Decker v. Nw. Envtl. Def. Ctr.,133 S.Ct. 1326 (2013), an opinion cited by the Court in its October 24, 2013 memorandum, Columbia Gas's counsel would know that the relevant principle is Auer deference (after Auer v. Robbins, 519 U.S. 452 (1997)), not Chevron deference. More importantly, Auer deference is sometimes "inappropriate," such as "when there is reason to suspect that the agency's interpretation 'does not reflect the agency's fair and considered judgment on the matter in question,'" suspicion which "might [arise] when the agency's interpretation conflicts with a prior interpretation." Christopher v. SmithKline Beecham Corp., 132 S.Ct. 2156, 2166 (2012) (quoting Auer, 519 U.S. at 462). Indeed "an agency's interpretation of a statute or regulation that conflicts with a prior interpretation is entitled to considerably less deference than a consistently held agency view." Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 515 (1994) (internal quotation marks omitted).

Had FERC's prior interpretation been abandoned long ago, followed by consistent adherence to the interpretation set forth in FERC's November 22, 2013 footnote, more than minimal deference to the latter interpretation might be warranted.  But there is no indication that this is the case. Neither FERC nor Columbia Gas points to evidence tending to show that FERC changed its interpretation at any time prior to November 22, 2013, and despite Columbia Gas's

representation that it has "litigated this issue in other courts" (Oral Arg. Tr., Nov. 4, 2013, pg. 52), this Court is still waiting for evidence, if any, of how those courts decided the issue in Columbia Gas's (or any other companies's) favor, which, at least theoretically, could allow Columbia Gas to argue that FERC acquiesced in the decisions of those Courts. In short, Columbia Gas adduces no evidence to rebut the inference to be drawn from the circumstances – i.e., FERC's November 22, 2013 footnote does not reflect the fair and considered judgment of the agency.

Under the circumstances, the Court is not convinced that it clearly erred. Columbia Gas's attack does not point to an actual error in reasoning behind the Court's judgment. Instead, Columbia Gas asserts that the Court should wholly defer to an agency interpretation that – according to precedent that Columbia Gas ignores – is properly due very little deference, if any beyond its power to persuade. Accordingly, although FERC's November 22, 2013 footnote provides a "possible reading" of the relevant regulations, see Decker, 133 S.Ct. at 1337, it is not the only possible reading, and almost by definition fails to establish that this Court clearly erred in adopting a contrary construction.

The Court is not without humility. The United States Court of Appeals for the Third Circuit – after considering the regulatory text, this Court's memorandum, and FERC's November 22, 2013 footnote – may ultimately side with Columbia

Gas. Nevertheless, in this procedural posture, the absence of <u>clear</u> error proffered by Columbia Gas dictates that this Court should stand by its previous ruling.

## IV. Conclusion

For the foregoing reasons, the Court denies the motions of Columbia Gas to alter or amend judgment.

>BY THE COURT:
>
>s/ Matthew W. Brann
>Matthew W. Brann
>United States District Judge